## Brewer, Appellant, v. Meyers.

*Mechanics' liens—Release of liens by subcontractor—Repudiation of release.*

Where a subcontractor at the request of a contractor for a building operation executes a release of liens which is to be used by the owner in securing a loan on a mortgage on the building, the subcontractor cannot repudiate the release because a check given to him at the time by the contractor was not paid, if it appears that the release was not obtained from him through any fraud on the part of the contractor, that the contractor was not acting as the

owner's agent and that the subcontractor told the owner that he had executed the release, and that he could pay out all the money due on account of the contract.

Where a subcontractor with others executes a release of liens in terms covering "all manner of liens, claims and demands whatsoever, which we, or any or either of us now have, or might or did have on or against the said premises," and the signatures are placed opposite the names of various trades, the subcontractor cannot claim that the release applied only to brickwork, and not to plasterwork, because his name was signed opposite the word "bricks." The use of the word "bricks" in such a case merely identified the person, and did not affect the terms of the lease.

*Practice, C. P.—Trial—Charge — Mistake in charge — Duty of counsel.*

Where the trial judge makes a misstatement in the course of his charge, it is the duty of counsel to call his attention to it at the time.

Argued Dec. 5, 1916. Appeal, No. 197, Oct. T., 1916, by plaintiff, from judgment of C. P. Northampton Co., June T., 1914, No. 35, on verdict for defendant in case of Morris Brewer v. Christian F. Meyers, Owner, and Edwin O. Kunsman. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Scire facias sur mechanic's lien.

BRODHEAD, J., charged as follows:

The plaintiff is Morris Brewer and he performed certain work and furnished certain material for the building of a double house here in Easton for Christian F. Meyers, the defendant. Morris Brewer was a subcontractor and, under the law of Pennsylvania, he had the right and did file what is known as a mechanic's lien against one-half of this double house which he was building, the amount of the lien being $637.50, upon which he issued a sci. fa., and if there was nothing else in this case, he would be entitled to recover the amount of his mechanic's lien, to wit, $637.50, with interest from January

12, 1914.   If that was all that there was in the case, why, of course, we would stop there and you would immediately return a verdict in favor of Morris Brewer for the amount of his mechanic's lien.   Now the amount is not in dispute, that is the amount of the lien.   As I remember the evidence, it is not disputed that the work and labor done in and about this particular one-half of the house, the subject of this suit, does amount to $637.50, together with interest from January 12, 1914. So far, then, there is no dispute.   But the defendant comes in and says, "Yes, that is all very well; but I have a release of liens wherein Morris Brewer signed his name under his seal, for a consideration, and he released his right to this mechanic's lien against this house."   And they produce the release of liens, which, of course, must speak mutely for itself, and upon the face of it, in the body of the release, it appears to be a release in full for all right to file any kind of a mechanic's lien.   There, again, gentlemen, if we stop there, this release of liens, if it is what it purports to be, and what the defendant claims it to be, of course, would be a full and complete defense to the entire claim of the plaintiff.   But the case doesn't stop there.   Morris Brewer, in answer to that, says, "Yes, I signed that release, but at the time that I signed it there was a contemporaneous agreement and distinct understanding that this release wouldn't be operative unless I received $600," and that that agreement and understanding and condition was the understanding between the parties in interest, that that wasn't only the understanding of Morris Brewer but it was the understanding of Edwin O. Kunsman, who was the contractor with Meyers and at the time that this condition was made was acting as the agent for Meyers and, therefore, Meyers was bound by that understanding.   That is the contention of the plaintiff.   I am not stating that that is the actual fact; I am directing your attention to the issues.   You must decide whether the facts warrant the conclusions arrived at by the plaintiff.   But I do

say, as a matter of law, that if you find that Mr. Brewer signed this release with that distinct understanding and agreement and that Christian Meyers was a party to that understanding and agreement and the minds of all the parties in interest met and it was distinctly understood that this release wouldn't be operative unless the $600 was paid, why, then, of course, they are held to that and the release wouldn't be operative under that state of facts. But in that connection, gentlemen, there are several things that you must determine: first, what was the precise, definite, condition that was agreed upon. If Morris Brewer signed this release upon the faith of a check which Kunsman gave him, upon the faith of Kunsman's promise, alone, and Morris Brewer ran his chances that Kunsman's check of $600 which was given him at the time this release was signed was good or that Kunsman would make it good and Morris Brewer relied upon that, alone, even though Kunsman failed to make good his check, yet this release, if it subsequently got into the hands of Mr. Meyers, honestly, and Meyers became the innocent holder for value of this release, then this release must stand. One important branch for you to determine, then, is, was Kunsman acting as the agent for Meyers, duly authorized so to act for Meyers? The theory of the plaintiff is, that Kunsman was acting as the agent for Meyers and was authorized to make any condition with Mr. Brewer that—or, he was authorized to make this condition in question, and that he was so authorized by Meyers. Was he? That is the important question for you to determine. Was Kunsman, the contractor of Meyers, when he got Mr. Brewer to sign this release, was he, Kunsman, the agent of Meyers? The burden of proof is upon the plaintiff to show that. The fact that Kunsman was the contractor of Meyers, alone, is not sufficient to establish that agency. On the contrary, the fact that Meyers entered into this original contract with Kunsman and Kunsman was the contractor to build a house for Meyers rather is antagonistic to the

theory that Kunsman was his agent; there were two parties dealing at arms length 'with each other, so that the fact that he was the contractor doesn't at all establish the fact that he was his agent, you understand. But Meyers was within his right and power to specially, or otherwise, constitute Kunsman his agent to go and make this arrangement with Mr. Brewer. Did he do so? If there is sufficient evidence in the case, which you will remember and analyze, and from which you can determine that Mr. Kunsman was Mr. Meyers' agent, why, then the next thing for you to determine is, what was the precise condition and agreement entered into between Kunsman and Brewer at the time of the signing? If Kunsman was not Meyers' agent, why, then it doesn't make any difference, so far as Meyers is concerned, what arrangement they entered into, because Kunsman was then acting for himself. The defendant contends that Kunsman was not acting as Meyers' agent but it was just the other way, that Kunsman was acting as Brewer's agent and Brewer said, "I will sign this; I will take your check for $600 and you go to Meyers and you get the money and you can make your check good." Of course, if Kunsman was acting as the agent for Brewer, then whatever talk they may have had, whatever agreement they may have made, wouldn't bind Meyers, that you can readily see. So it will be a very important element for you to consider whether or not, then, this release got into the hands of Meyers and Meyers obtained possession of it by due delivery, innocently and honestly, so that he became the innocent holder for value of this release. If he did, why then, of course, the release must speak for itself. If he did not, then you can find it subject to that condition. Passing that point, then, and assuming that you find that this release got into the hands of Meyers properly and that he held it for value and without any condition imposed upon him, the next question is, what is this release, what does it release? The defendant says it releases everything; but the plaintiff

contends that it does not release the plastering work.
It comes down to the question of the intention of the
parties at the time of the signing of the release.   [If it
was the intention of the parties in interest that the sig-
nature of Morris Brewer to this release meant, as ap-
parently it says in the body of the release, that it should
be a clean release of everything, of all liens of any kind,
of any nature, then, of course, he must be bound by it, if
that was the intention.   If, however, it was the inten-
tion, and was so understood by all the parties, that when
Morris Brewer signed upon that line that you will see
upon the release marked "Bricks," that that meant that
he released for the bricks only, and that was the under-
standing and the intention, why then that signature
would be limited to that extent and would release only
for the bricks.]  (6)   Again, he signs on the next line,
"Morris Brewer, Bricklayer," and if it was the meaning
and intention and the understanding of the parties that
that would apply only to the work of bricklaying, why
then that release would be limited to that extent.   It is
a circumstance proper for you to take into consideration,
that this release was actually signed by Morris Brewer
twice.   Is that significant of anything?   If, as suggested
by the defendant, it is a release in full, then one signa-
ture is enough; why two?   The suggestion for that is,
that his signing twice means that the first signature is
for bricks and the second signature is for the bricklay-
ing, and that the absence of his signature for the plaster-
ing shows that he didn't mean to release this lien for the
plastering but only meant it to apply to bricks and brick-
laying.   You will recall, in that connection, the conver-
sation held at Mr. Shawdy's office, when all of the parties
in interest in this action met; and if I recall the evidence
correctly, one of the objections to this release was that
Brewer hadn't signed for the plastering work and that,
therefore, they refused to pay any money at that time on
it.   That is a circumstance, if I state it correctly; but
your recollection of this evidence must prevail, gentle-

men. My recollection, as I said before, is not to be at all binding upon you as to the facts, and I am only trying to illustrate what the law is applicable to this case. I say, then, that the conversation at Mr. Shawdy's office, where Mr. Shawdy, Mr. Meyers, Mr. Brewer and Mr. Kunsman were all present, seemed to contemplate that he should have signed for the plastering if it was to be a complete release. That is a circumstance from which you may be able to come to the conclusion that this release, if it stands, is to be applied to the bricks and the bricklaying and not to the plastering. If you come to that conclusion by the train of circumstances which I have related and from the evidence and the testimony as you will remember it, then you, with propriety, will inquire, what did that plastering amount to? My recollection is, that the only evidence on that point was the evidence of Mr. Brewer; and he couldn't give the exact amount, but he said that the plastering amounted to between $250 and $300. That is my recollection, but you will recall that perhaps better than I. If you find the facts that way and that he did not release the plastering but did release for the bricks and bricklaying, then the logical conclusion would be that the plaintiff would be entitled to a verdict for the amount of the plastering, unless you can find that, notwithstanding this release, payment has been made by the defendant. Now, the defendant suggests that he did pay, that he paid $455 to Mr. Brewer, and that that payment was made by a check from Mr. Meyers for $500 to his contractor, Kunsman, and that Kunsman forwarded $455 of that money to Mr. Brewer and that that $455 was payment upon this Meyers contract and that Meyers should get the credit of that $455. In that connection, gentlemen, the plaintiff comes back and says, "Why, no; that $455 wasn't applied to the Meyers contract; Meyers didn't send it to me; and when Kunsman sent it to me he said that it should not be applied to the Meyers contract, but, quite the contrary, should be ap-

Charge of Court below. [68 Pa. Superior Ct.
plied to an old note of his that I held." Now, Mr. Kuns-
man swears that when he sent that $455 to Brewer,
that his intention, and his instruction to Brewer, was
that that $455 should be applied to that old note.
Mr. Brewer swears that he received that check of $455
for that purpose, only, and in point of fact he did apply
it only to the old note and not to the Meyers contract.
The defendant, however, says, that Mr. Brewer tele-
phoned to him and said that he got those $455, al-
though the defendant said he understood it was $485,
and that it was all O. K. and he had applied it to his job,
that is Meyers' job. He said that was the declaration
on the part of Mr. Brewer; and that the production of
Mr. Brewer's books showed that that $455 was ap-
plied to the Meyers contract. Now, that is the issue on
that point; and you have got to determine that. And
the law applicable to that branch of the case is this, that
notwithstanding the fact that Meyers gave Kunsman
$500 with the expectation, or even with the positive
instruction, that that money should be sent to Brewer
for the Meyers contract, if in point of fact Kunsman
didn't do it, but, on the contrary, sent it to Brewer with
instructions to apply it to his old note, then Brewer's
duty was to apply it to the old note, because Kunsman,
when he sent the money to Brewer, had the right to di-
rect him what to do with that money, to what account
to apply it; and if he gave Brewer the instruction to ap-
ply it to the old note, then it was Brewer's duty to apply
it to the old note. But the suggestion on the part of the
defendant is, "I don't care what the instruction was
from Kunsman to Brewer, and I don't care what Brew-
er's duty was to Kunsman as to the application of that
$455, that, notwithstanding those instructions, in
point of fact," that is the contention of the defendant,
"in point of fact, Brewer applied it to the Meyers job."
Now, did he, or didn't he? Brewer says he did not, that
he applied it to the old note. Kunsman says he gave
him instructions to apply it to the old note. The plain-

tiff produces the old note, which corresponds very closely in amount. All these circumstances might lead you, of course, to the conclusion that the instruction from Kunsman to Brewer, to apply it to the old note, was in point of fact followed out. [Yet, according to the testimony of the defendant, Brewer's declaration at the time was, that he didn't apply it to the old note but he had applied it to the Meyers job, that he so declared to Meyers, and that his books show it. Whether or not his books show it, is for you to determine. You can take that as some evidence in the case. You can also take the declaration that the defendant alleged, that that was applied to the Meyers job.] (7) And he must sustain the affirmative of that declaration and he must convince you that that $455 was in point of fact applied to the Meyers job and not to the old note. There seems to be —I don't recall any dispute now and I say there seems to be no dispute of the fact that Meyers did pay $500 to Kunsman on or about that date. That was a payment from Meyers to Kunsman and Meyers would have the right to say to Kunsman, "I have paid you $500 and I want a release of liens." If Kunsman subsequently produced a release of liens and handed it over to Meyers and there was nothing else confusing in this case, why, then it could be justly said, of course, that Meyers received that release of liens from Kunsman for the consideration of the $500 paid to Kunsman; and if Morris Brewer depended upon—they say, false promises or false hopes that he had in Kunsman about having his $600 check paid and that $600 check went to protest, why, that was very unfortunate for Mr. Brewer. But if this release of liens got into the hands of Meyers innocently and honestly, and he is an innocent holder for value, then the release must speak for itself. Then you are brought back to the question, what is the release? If it is for bricks and bricklaying, only, then Brewer could be entitled for the plastering. Don't you see the great many confusing questions of fact, the large

amount of evidence taken pro and con? And you have got to reconcile that evidence as best you can. Every man is presumed to be telling the truth; and it will be your duty, so far as possible, to reconcile the evidence. But where you cannot reconcile it, why, then you have got to determine which witnesses to believe, you have got to determine the credibility of these witnesses; and on that point, of course, you have the right to take all proper matters into consideration, their appearance upon the witness stand and manner of testifying, from which you can judge of their reliability and credibility. There is a circumstance in this case which I think is undisputed, and that is, that that check of $600 given by Kunsman to Brewer was protested on or about September 18, 1913, and that check, although protested upon that day, is still in the possession of Morris Brewer. Is that check good since that day; is that check good to-day; will that check be good to-morrow? Can he sue Kunsman on that check? It is in his possession; he has never given it up. That is a circumstance, gentlemen, from which we are forced to the conclusion, of course, that he is the possessor of this mechanic's lien and also possessor of the check. If that check should get into the hands of an innocent holder, why, I suppose it could be collected—an innocent holder for value, of course. So here we have outstanding—for one debt of $637.50, we have outstanding one mechanic's lien and one check. Both cannot be collected. That is a circumstance that I call to your attention, only; and it may have some bearing upon this case. At all events, it is a fact in the case. This whole case has been tried upon the theory, of course, that this release applies to the lot of land upon which this particular double house is situate. There seems to have been no question raised in the course of trial and the whole case has been tried upon the apparent admission on both sides, taking for granted that this release does apply to that particular lot, although in reading the release you will find that it

refers to a lot of land known as No. 215, whereas the mechanic's lien refers to house No. 217. Of course, the release applies to the lot of land and the mechanic's lien designates that lot of land by giving the house number; in other words, the house number is not the same as the lot number. But as I say, it has been taken for granted through the whole course of this trial that that is the same property; and from all the evidence in the case, you can determine that fact, that this release does apply to this same property. Of course, if there is such evidence in the case, which I do not just now recall, but if you do find that this release of liens refers to another house and another property, then you will throw out this release entirely. But if you find, as I say, that it applies to this same property that we are talking about and have been trying here for the last two days, why, then you can so determine.

Plaintiff presented these points:

2. Under the evidence the creditor, Brewer, when he accepted the check of $455 from Kunsman had no right to apply it otherwise than to the protested note of June 21, 1913, due July 21, 1913, and protested for nonpayment at maturity, given by Kunsman.

Answer: That point, I affirm, as I have already explained in my general charge. That is, Brewer would have no right to apply that $455 check to any other account except the account that Mr. Kunsman requested him to apply it to. If he didn't so apply it, it would be a breach of his duty to Kunsman. So the point is affirmed with this explanation, that while he had no right, while it would be a breach of duty to Kunsman, it doesn't mean that in point of fact he couldn't apply it to any other account, because a man can do that which he has no right to do. His not doing so would be a breach of duty to Kunsman. (1)

3. Under the evidence, Kunsman, as the contractor for the defendant, Meyers, was directed to obtain the signatures to the release and became the agent of Meyers for

that purpose and the signing of the paper by Brewer with the statement that he did. so upon the condition that he was to be paid $600 was binding upon Meyers and the release was void unless the jury believe that the $600 was paid to Brewer.

Answer: I cannot affirm that point as drawn; it assumes so many facts as being established which facts are still in dispute. And I have, I think, fully explained the law raised by this point in my general charge. (2)

4. The release signed by Brewer was limited to the bricks and bricklaying by its terms and could not be construed to extend to the contract for plastering.

Answer: That point, I affirm, with the qualifications and explanations contained in my general charge. (3)

The court erred in the general charge to the jury the effect of the charge being to confuse the jury and mislead them.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2, 3-6, 7) above instructions quoting them.

*Geo. R. Booth*, with him *H. A. Cyphers*, for appellant, cited: Green v. Thompson, 172 Pa. 609; Meek v. Frantz, 171 Pa. 632; Poundstone v. Jones, 182 Pa. 574; Rapp v. Rapp, 6 Pa. 45; McLarren v. Robertson, 20 Pa. 125.

*Frank P. McCluskey*, for appellees, cited: Dowd v. Crow, 205 Pa. 214.

OPINION BY KEPHART, J., November 19, 1917:

The appellant was a subcontractor under Kunsman, who had a contract with Meyers, the owner, for the erection of a building. In the course of the construction it became apparent to the owner that the contractor was in financial trouble. At the suggestion of a real estate broker, from whom he was about to borrow some money

on the building, he demanded from Kunsman a release of all liens, as the mortgagee was unwilling to advance any money unless they were procured. Kunsman interviewed the appellant and secured a release of liens, giving him a check for $600 on account of moneys due him. The release of liens was turned over to the appellee, Meyers, who in turn handed it to the mortgagee. It later developed that there were no funds in the bank to meet Kunsman's check of $600. Kunsman testified that he gave the check to the appellant believing that he would get enough money from Meyers to make the check good before it could be presented. A dispute arose between the appellant and the appellee, Meyers, as to the application by Kunsman of certain money that had been paid by Meyers on account of this building. The appellant then repudiated the release of liens and filed a claim upon which this action is founded. Meyers was not present when Kunsman and the appellant talked about the release and did not know what was said when it was received. There is no evidence to warrant a finding that Kunsman acted as Meyers' agent, nor does it appear that the release was obtained through any fraudulent conduct on the part of Kunsman that could affect Meyers; and it does appear that the appellant told Meyers that he had executed the release and that he could pay out all the money due on account of Kunsman's contract. It passed into the hands of the mortgagee and was one of the inducing causes for placing the mortgage on the appellee's property. It comes close to the case of Dowd v. Crow, 205 Pa. 214. We have considered this question in the light of appellant's contention. The execution of the release and the occurrences prior thereto were proper matters for the consideration of the jury and the court correctly charged the jury on the law applicable thereto.

The release in terms covered "all manner of liens, claims and demands whatsoever, which we, or any or either of us now have, or might or could have, on or against the said premises above described." While the

signatures were placed opposite the various trades engaged in the construction of the building, these designations merely identified the person, and did not affect the terms of the release. In submitting to the jury the question of intention, the plaintiff was accorded more than he was entitled to. The learned court thought there was a variance between the signatures and the body of the instrument, and he permitted the jury to determine the intention of the parties from the evidence. The payment of $455 is not now important. The contradictory statements of the appellant, the notation on the check, "Meyers' business," and the conversation between the various parties on September 18th, would be sufficient to sustain the finding that it had been received by the appellant on account of the defendant's contract. In this view the answer to the plaintiff's second point was proper.

The misstatement by the court in its charge, which forms the seventh assignment of error, if material, should have been called to the court's attention. It was, however, concerning a matter appearing on the plaintiff's book and was of such nature that the jury must have known it was a mistake. The appellant was in no wise prejudiced. Judge BRODHEAD's charge to the jury was clear and concise. It presented the case fairly, and the plaintiff has no just cause of complaint.

The assignments of error are overruled and the judgment affirmed.